UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SMART COMMUNICATIONS US, INC.,

**Plaintiff,**

-v-                                                                    Case No.

ATN, INC.,

**Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Smart Communications US, Inc., hereby sues Defendant, ATN, Inc., and states:

1.      Plaintiff is a corporation incorporated under the laws of Florida with its principal place of business in the Middle District of Florida.

2.      Defendant is a corporation incorporated under the laws of Georgia with its principal place of business in St. Marys, Georgia.

3.      Defendant is registered to do business in Florida.

4.      Defendant regularly markets to potential customers in Florida and has several existing customers in Florida.

5.      Defendant is in the business of providing telecommunications services to correctional institutions.

6.      Defendant currently provides telecommunications services to correctional institutions in Florida including CCA Lakecity Detention, Calhoun County Jail, Bay County Jail, Dixie County Jail, Eckerd Challenge Program, Gilchrist County Jail, Gulf County Jail, and Nassau County Jail.

35147709.10

7.     This action includes claims under federal law for false designation of origin under 15 U.S.C. §1125(a), copyright infringement under 17 U.S.C. §501, and declaratory judgment under 28 U.S.C. §2201.

8.     This action further includes claims under state laws that arise under the same nucleus of facts as the federal claims, including misappropriation of trade secrets, breach of contract, breach of fiduciary duty, common law unfair competition, deceptive and unfair trade practices, unjust enrichment, and declaratory relief.

9.     There is diversity of citizenship among Plaintiff and Defendant and the amount in controversy exceeds $75,000.

10.    This court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1332, 1367, 1338(a), and 1338(b).

11.    Venue is proper in this court because (i) Plaintiff is a resident of the Middle District of Florida, (ii) a substantial part of the events giving rise to this claim occurred in the Middle District of Florida, (iii) a substantial part of the harm that has resulted, and will continue to result, from the acts that gave rise to this action have been felt, and will continue to be felt, in the Middle District of Florida, and (iv) Defendant resides in the Middle District of Florida as residency is defined in 28 U.S.C. §1391.

12.    To the extent any allegations relating to jurisdiction or venue are inconsistent with one another, or any other allegations in this complaint, they are intended to be alleged in the alternative.

## Smart Communications: The Plaintiff

13.    Plaintiff created a kiosk system that provides an electronic communications platform allowing inmates housed at correctional facilities to: (i) communicate with friends,

family members, attorneys and others through e-mail, (ii) enjoy "Remote Video Visitation," which allows face-to-face communication with friends and family members over video streamed through the internet, (iii) submit complaints and requests to those in control of the correctional facilities, including requests for books, legal information, commissary supplies and help with grievances, and (iv) access electronic law libraries.

14.     Plaintiff does not charge correctional facilities for its kiosks, or for their installation, maintenance or support. Nor does it charge the facilities a fee for use.

15.     Instead, Plaintiff monetizes the system by charging inmates and those wishing to communicate with them a fee for their use of the kiosks, and by charging third-parties for advertising space on the system (*e.g.* attorneys wishing to advertise legal services to inmates).

16.     Plaintiff collects the majority of its revenue through a website that persons wishing to communicate with inmates use to register on the system and pay the attendant service fees for its use.

17.     Plaintiff markets its services as the "SmartKiosk" system.

18.     The SmartKiosk system contains special features to deal with the security challenges posed by the corrections environment (*e.g.* software that allows officials to monitor communications).

19.     The SmarkKiosk system also contains features that allow inmates to file complaints and requests, and to track the status of those complaints and requests as they are being processed.

20.     The kiosks used with the SmartKiosk system are specially designed to be durable enough for use in a correctional facility environment, to meet ergonomic standards including

those imposed under the Americans with Disabilities Act, and to have a unique, two part design that reduces the cost and effort required for installation and maintenance.

21.     The SmartKiosk system contributes to a safer and more cost-effective facility by cutting down on the number of in-person visits while maintaining inmate contact with the outside world and reducing the need for staff and inmates to physically move around the facility.

22.     The SmartKiosk system also helps maintain peace and order at correctional facilities by facilitating easier and more frequent communications between inmates and their friends and family members.

23.     The SmartKiosk system further helps maintain peace and order at correctional facilities by ensuring that inmate grievances and requests are tracked and processed, and providing inmates with feedback as to the status of those grievances and requests.

24.     Plaintiff shares revenues it receives through the SmartKiosk system with the facilities in which the systems are installed.

25.     As a result, the SmartKiosk system helps offset state and county budget cuts suffered by correctional facilities by providing an additional revenue stream for the affected facility, without requiring additional budgetary expenditures.

26.     Plaintiff and its affiliated entities bear the entire cost for developing, manufacturing, installing and supporting the SmartKiosk system.  Despite this fact, Plaintiff begins sharing revenue with the correctional facilities immediately upon installation of the SmartKiosk system.

27.     In order to ensure that Plaintiff recoups its costs and has a reasonable opportunity to profit from its investments, Plaintiff enters into multi-year, exclusive contracts with the correctional institutions.

28.     Plaintiff's systems are installed and in use in multiple correctional facilities, including facilities in the State of Florida.

29.     The SmartKiosk system and business model were innovations created by Plaintiff.

30.     Prior to the events that gave rise to this complaint, Plaintiff was the only business in the country to offer a standalone email kiosk system to correctional facilities under a business model that generated revenue for the facilities, and did not require any capital investment by the facilities.

## ATN: The Defendant

31.     Defendant provides inmate telephone and customer care services to correctional facilities around the country, including substantial and not isolated business associations with correctional facilities located in the State of Florida.

32.     At the time of filing this complaint, Defendant provides phone services to Florida correctional facilities, including at least one facility located in the Middle District of Florida.

33.     Prior to the events that led to this action, Defendant did not possess an inmate electronic messaging or remote video visitation system that it could offer to correctional facilities.

## The Relationship Between Plaintiff and Defendant

34.     In 2013, representatives of Plaintiff and Defendant met at conferences held at Amelia Island, Florida and Naples, Florida.

35.     At those meetings, Plaintiff and Defendant began discussions about forming a business partnership between the two entities.

5

36.     On or about August 9, 2013, the Federal Communications Commission issued a release announcing rules limiting the amounts telecommunications providers could charge to correctional facilities.

37.     On information and belief, Defendant's desire to partner with Plaintiff was motivated by a need to find new revenue streams to replace revenues that it believed it would lose as a result of complying with the new FCC rules.

38.     The goal of the business partnership between Plaintiff and Defendant was to allow Defendant to sell Plaintiff's SmartKiosk system to Defendant's existing and future telecommunications customers.

39.     The intention of the parties was that Plaintiff would (i) provide proprietary information on the workings of the SmartKiosk system, pricing, and business model, (ii) assist in the sales and marketing efforts of Defendant, (iii) provide, install, operate, and support the SmartKiosk systems, and (iv) share portions of the revenue it received with Defendant.

40.     In return, Defendant would market and sell the SmartKiosk system to its existing and future clients.

41.     On or about September 5, 2013, Plaintiff and Defendant entered into a contract titled "Mutual Non-Disclosure Agreement" (the "NDA"). *See* NDA, attached as "Exhibit A" to this Complaint.

42.     Pursuant to the NDA, Plaintiff and Defendant acknowledged that they had entered into a business relationship which could involve the disclosure of confidential and proprietary information from one to the other. Plaintiff and Defendant, among other things, mutually agreed (i) not to disclose the other's confidential information (as defined in the agreement) to any other person or entity without the prior written consent of the other; and (ii) not use the other's

confidential information (as defined in the agreement) in any manner except for the purposes of a transaction with the other. The NDA also required each party to promptly return all confidential information to the other party upon written request.

43.     Once the NDA was in place, Plaintiff provided Defendant with confidential information.

44.     The confidential information provided by Plaintiff included, but was not limited to: marketing materials not otherwise made available to other inmate service providers, details on Plaintiff's business model including pricing and accounting materials related to the SmartKiosk system, documents related to its Smart Jail Mail system (a component of the SmartKiosk system), documents related to its Remote Video Visitation system (a component of the Smart Kiosk system), and documents related to the operation, capabilities, and internal workings of the SmartKiosk system.

45.     Plaintiff also provided two demonstration kiosks to Defendant at a meeting that took place in Gainesville, Florida.

46.     Having possession and control of the demonstration kiosks provided Defendant with unfettered access to the design features of the kiosks, and further access to Plaintiff's confidential information.

47.     Among the Documents disclosed under the NDA was a confidential summarization of Plaintiff's business model (the "Business Model Summary") that was given to Defendant at a meeting in Tampa, Florida.

48.     The Business Model Summary had never been shared with any person other than Plaintiff's employees and contractors and advisors bound by obligations of confidentiality.

49.     As contemplated, Plaintiff and Defendant began marketing the SmartKiosk system to various correctional facilities around the country, including facilities located in St. Tammany Parish, Louisiana, Richland County, South Carolina, and Polk County, Georgia.

50.     Plaintiff supported these efforts by, among other things, disclosing how it sold the SmartKiosk system, participating in joint sales presentations, and performing site surveys for the correctional facilities. Plaintiff bore all of the costs of its participation in these efforts.

51.     The marketing efforts led to commitments from correctional facilities in St. Tammany Parish, Richland County, and Polk County to allow Plaintiff to install the SmartKiosk system in their respective locations.

52.     Defendant also displayed the kiosks provided by Plaintiff in Defendant's booth in at least two tradeshows.

53.     Plaintiff's system was so well received by Defendant's customers and prospective customers that Defendant's representative stated to Plaintiff that "I think we can get into as many [facilities] as we can do!!"

54.     In connection with its various sales efforts, Defendant also asked for, and received, copies of Plaintiff's promotional materials including a detailed brochure describing the SmartKiosk system and including testimonials and customer satisfaction survey results from Plaintiff's users (the "SmartKiosk Brochure").

55.     Plaintiff intentionally provided the SmartKiosk Brochure in a PDF file that did not allow Defendant to change its contents, but offered to add Defendant's logo to the brochure in connection with their joint marketing and sales efforts.

56.     Defendant, however, managed to extract the text and images from the PDF file and create an editable version of the SmartKiosk Brochure.

57.     Defendant then proceeded to remove Plaintiff's name and contact information from the edited version, and inserted its own logo and contact information in its place.  The edited version, however, still retained several uses of Plaintiff's SmartKiosk trademark.

58.     On the last page of the modified brochure, Defendant included a vague reference to Plaintiff, but did not provide any contact information for Plaintiff or explain that the SmartKiosk System was Plaintiff's product, and not Defendant's.   The reference instead instructed interested parties to contact Defendant if they were interested in the system.

59.     Plaintiff learned of Defendant's modifications to the SmartKiosk Brochure when an employee of Defendant included Plaintiff's president on an email in which the modified brochure was sent to a prospective customer.

60.     Plaintiff had not approved the modified brochure prior to it being distributed by Defendant to at least one prospective customer.

61.     Subsequent emails between Defendant and its prospective customer made clear that Defendant's objective was not to co-market Plaintiff's system as had been agreed, but to private label it and integrate it into Defendant's other offerings.

62.     At no time had Plaintiff ever agreed to allow Defendant to private label its products or to replace Plaintiff's interfaces with interfaces that marketed only Defendant's services.

63.     Plaintiff objected to the use of the modified brochure in a phone call between Plaintiff's president and Defendant's president.

64.     On several occasions prior to Defendant's sending of the modified brochure, Defendant and Plaintiff had discussed documenting the details of their arrangement in a formal agreement.

65.     As the discussions progressed, however, Defendant made ever increasing demands to increase the share of revenue it would receive from the SmartKiosk systems.

66.     In an attempt to salvage the deteriorating business relationship, Plaintiff requested that Defendant sign a document memorializing the terms of their business relationship. Defendant refused.

## The Breakup

67.     On April 29, 2014, Plaintiff demanded that Defendant return all of Plaintiff's confidential information pursuant to the NDA.

68.     Defendant has yet to fully comply with Plaintiff's demand.

69.     Defendant eventually returned Plaintiff's kiosks on or about May 20, 2014.

70.     Defendant has not returned copies of the Business Model Summary to Plaintiff or any other confidential information disclosed by Plaintiff.

71.     The correctional facilities in St. Tammany Parish, Richland County, and Polk County that had previously agreed to use Plaintiff's SmartKiosk system are now dealing exclusively with Defendant, and refuse to communicate with Plaintiff regarding their prior commitments. On information and belief, these refusals to communicate with Plaintiff were prompted by communications from Defendant.

72.     In fact, Defendant has threatened to sue Plaintiff for tortiuous interference if Plaintiff contacts those correctional facilities or any other existing customer of Defendant regarding the installation of the SmartKiosk system.

73.     Defendant's threat of such a lawsuit is an admission that it is now engaging in a line of business that competes with Plaintiff, though it had no such capability to do so prior to meeting Plaintiff.

74.     On information and belief, Defendant is now disclosing plaintiff's confidential information to others and/or using confidential information it gathered in its relationship with Plaintiff to develop, market and sell products and services that compete directly with those of Plaintiff.

75.     Indeed, Defendant's website now advertises e-mail services as a service that it can provide to correctional facilities.

76.     Plaintiff has hired the undersigned attorneys to prosecute this action and is required to pay them a reasonable fee for their services.

77.     All conditions precedent to the maintenance of this action, and all of the causes of action alleged within, have been satisfied or waived.

## Claim I – False Designation of Origin

78.     This count states a claim for damages and other relief under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

79.     This court has jurisdiction over the claims set forth in this count under 15 U.S.C. §§1121 and 1125(a), and 28 U.S.C. §1338(a).

80.     Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

81.     To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

82.     Defendant produced modified copies of the "SmartKiosk Brochure" that included uses of Plaintiff's SmartKiosk trademark, pictures and descriptions of Plaintiff's kiosks, and included Defendant name and logo at the top of each page (the "Modified Brochure").

83.     The Modified Brochure included statements from users of Plaintiff's system praising that system.

84.     The Modified Brochure included results from customer satisfaction surveys performed by Plaintiff that summarized customers' experiences with Plaintiff's products and services.

85.     Plaintiff uses the term SmartKiosk in commerce as an identifier of Plaintiff as the source of Plaintiff's SmarkKiosk products and services, and has been doing so since at least November 2012.

86.     The only reference to Plaintiff in the Modified Brochure, however, is a statement on the last page that the kiosk is offered "thru our strategic partner Smart Kiosks / Smart Communications out of Tampa FL," followed by Defendant's (not Plaintiff's) contact information (the "Disclaimer").

87.     The Disclaimer does not inform prospective purchasers that the SmartKiosk system is made by Plaintiff, sold by Plaintiff, installed by Plaintiff, operated by Plaintiff or serviced by Plaintiff. As a result, potential customers are likely to be confused and believe that Defendant is the source of the SmartKiosk system.

88.     Plaintiff consented to the addition of Defendant's logo on the Modified Brochure.

89.     Plaintiff did not consent to the removal of its name from the Modified Brochure.

90.     Plaintiff did not approve the Disclaimer.

91.     When Plaintiff learned of the use of the Modified Brochure, Plaintiff objected.

92.     The Modified Brochure portrays Defendant, and not Plaintiff, as the source of the kiosk product and related services.

93.     Defendant distributed the Modified Brochure to prospective purchasers.

94.     The prospective purchasers that Defendant distributed the Modified Brochure to include the St. Tammany Parish Sheriff.

95.     Defendant's use of pictures of Plaintiff's products, descriptions of Plaintiff's products, testimonial statements from Plaintiff's customers, and customer satisfaction results from Plaintiff's users in the Modified Brochure impliedly misrepresents that Defendant is the source of Plaintiff's products, or that competing products produced by Defendant are approved by or associated with Plaintiff.

96.     Defendant's use of the Modified Brochure constitutes a false designation of origin which is likely to deceive and has deceived customers and prospective purchasers into believing that Defendant is the source of Plaintiff's products.

97.     Defendant displayed demonstration kiosks manufactured and provided by Plaintiff at tradeshows.

98.     On information and belief, Defendant portrayed itself as being the source of Plaintiff's kiosks at the tradeshows.

99.     Plaintiff consented to the display of the demonstration kiosks at certain tradeshows.

100.    Plaintiff did not consent to Defendant characterizing the demonstration kiosks as being representative of products of Defendant, as opposed to being representative of Plaintiff's products being sold in partnership with Defendant.

101.    Defendant states on its website that "Inmate Email" is "coming soon."

102.    On information and belief, Defendant is creating products and services that compete with the products and services of Plaintiff described in the Modified Brochure and displayed at the tradeshows.

13

103. On information and belief, Defendant has offered those competing products to prospective customers, including prospective customers who received the Modified Brochure or attended the tradeshows.

104. Defendant's display of Plaintiff's demonstration kiosks at tradeshows followed by Plaintiff's subsequent efforts to sell its own competing system, constitutes a false designation of origin which is likely to deceive and has deceived customers and prospective purchasers into believing that Defendant is the source of Plaintiff's products and services, or that Plaintiff endorses or is associated with products and services offered by Defendant.

105. Defendant's use of the Modified Brochure and display of Plaintiff's demonstration kiosks at the tradeshows is likely to divert, and has diverted, customers away from Plaintiff.

106. Plaintiff has no control over the nature and quality of any competing products made, offered or sold by Defendant.

107. Any failure, neglect or default by Defendant in providing inmate messaging products and services will reflect adversely on Plaintiff, hampering Plaintiff's efforts to protect its reputation for high quality products, thereby resulting in loss sales for Plaintiff and loss of the investments Plaintiff has made to promote its own products and services.

108. The loss of sales for Plaintiff and the loss of investments made by Plaintiff are irreparable.

109. Plaintiff has no adequate remedy at law in redress for Defendant's acts of unfair competition.

110. Defendant's false designation of origin will continue unless enjoined by this court.

111. Defendant's flagrant use of Plaintiff's systems, materials, mark and reputation to further its own business purposes makes this an exceptional case under the Lanham Act, entitling Plaintiff to enhanced relief and attorneys' fees as set forth in 15 U.S.C. §11117(a)

112. Plaintiff is entitled to damages resulting from Defendant's actions in amounts to be proven at trial.

113. The damages Plaintiff is entitled to include, but are not limited to, Defendant's actual profits, Plaintiff's lost profits, and special damages, or such other damages that may be deemed proper by this court.

114. Plaintiff is entitled to an order permanently enjoining Defendant from future acts of false designation of origin, further use of any mark or device identical of confusingly similar to Plaintiff's SmartKiosk mark, and requiring Defendant to deliver to Plaintiff any and all copies of the SmartKiosk Brochure, the Modified Brochure, all other materials derived from the SmartKiosk Brochure, and all materials containing the SmartKiosk mark or any confusingly similar mark or device.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including awarding Plaintiff its compensatory, consequential, and special damages including its lost profits, Defendant's profits, loss of goodwill and damage to its reputation, pre- and post-judgment interest, attorney's fees and costs, imposing a constructive trust over Defendant's past and future profits derived from its acts of false designation of origin for the benefit of the Plaintiff, requiring Defendant to deliver to Plaintiff their entire inventory of brochures, marketing materials, and products bearing images of Plaintiff's products or infringing the mark SmartKiosk or using a confusingly similar term or device, permanently enjoining

Defendant from future acts of unfair competition against Plaintiff, and any other relief the Court finds just and appropriate.

<b><u>Count II – Common Law Unfair Competition</u></b>

115.    This count states an action for common law unfair competition.

116.    Jurisdiction for the claims stated in this count is pendant to Count I for false designation of origin pursuant to 28 U.S.C. §1338(b).

117.    Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

118.    To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

119.    Defendant learned valuable information about Plaintiff's products and services through information disclosed subject to the NDA signed by the parties, and in reliance on Defendant's faithful participation in their joint business activities.

120.    On information and belief, Defendant is using information it learned from Plaintiff to develop and sell its own inmate messaging and video visitation products and services.

121.    Defendant generated interest for its own inmate messaging and video visitation products and services among prospective purchasers through the use of the Modified Brochure and the demonstration kiosks provided by Plaintiff.

122.    On information and belief, Defendant is now offering its own inmate messaging and video visitation products and services.

123.    By using Plaintiff's proprietary information to develop and sell competing products and services, and using the Modified Brochure and Plaintiff's demonstration kiosks to

generate interest in Defendant's competing products and services, Defendant has engaged in unfair competition, deceptive advertising, and unfair trade practices in violation of common law.

124.    Defendant's conduct has damaged, and will continue to damage Plaintiff, including by diverting customers away from Plaintiff and eroding the value of Plaintiff's reputation.

125.    The damages suffered by Plaintiff, including loss of goodwill, due to Defendant's conduct are irreparable.

126.    Plaintiff has no adequate remedy at law in redress for Defendant's acts of unfair competition.

127.    Defendant's conduct will continue to damage Plaintiff if not enjoined by this court.

128.    Plaintiff is entitled to damages resulting from Defendant's actions in amounts to be proven at trial.

129.    The damages Plaintiff is entitled to include, but are not limited to, Defendant's actual profits, Plaintiff's lost profits, and special damages resulting from Defendant's acts of unfair competition, or such other damages as may be deemed proper by this court.

130.    Plaintiff is entitled to an order permanently enjoining Defendant from future acts of unfair competition including sales of products or services derived from the study of Plaintiff's SmartKiosk System and other confidential information obtained from Plaintiff.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including awarding Plaintiff its compensatory, consequential, and special damages including its lost profits, Defendant's profits, loss of goodwill and damage to its reputation, pre- and post-judgment interest, attorney's fees and costs, imposing a constructive trust over

Defendant's future profits derived from its acts of unfair competition for the benefit of the Plaintiff and permanently enjoining Defendant from future acts of unfair competition against Plaintiff, and any other relief the Court finds just and appropriate.

### Count III – Copyright Infringement

131.     This count states a claim for relief for infringement of copyrights owned by Plaintiff in violation of 17 U.S.C. §106 and is being brought pursuant to 17 U.S.C. §501.

132.     This court has jurisdiction over the claims stated in this count pursuant to 28 U.S.C. §1338(a).

133.     Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

134.     To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

135.     Plaintiff is the owner of U.S. Copyright TXu 1-900-844 in a work of authorship entitled SmartKiosk (the "Kiosk Brochure"). A copy of the Kiosk Brochure is attached to this complaint as "Exhibit B."

136.     The Kiosk Brochure is a twenty page brochure discussing Plaintiff's email kiosk solution for inmates.

137.     The Kiosk Brochure includes original expression subject to protection under the Copyright Act including text and photographs of Plaintiff's products.

138.     The Kiosk Brochure was authored by employees of Plaintiff and an outside contractor who has assigned his rights in the Kiosk Brochure to Plaintiff.

139.     Plaintiff provided a PDF copy of the Kiosk Brochure to Defendant.

140.     Defendant made copies of the Kiosk Brochure.

18

141.    Defendant created a derivative work based on the Kiosk Brochure (the "Modified Brochure") by creating a modified brochure that included Defendant's logo on each page, removed references to Plaintiff, and modified portions of the brochure text.

142.    A copy of the Modified Brochure is attached to this complaint as "Exhibit C."

143.    Plaintiff consented to Defendant creating a derivative work that added Defendant's logo to the Kiosk Brochure.

144.    Plaintiff did not consent to Defendant removing references to Plaintiff or modifying the brochure text.

145.    Defendant made multiple copies of the derivative work based on the Kiosk Brochure and distributed those copies to others without Plaintiff's consent.

146.    By making unauthorized changes to the Kiosk Brochure, creating an unauthorized derivative work, and distributing that derivative work without Plaintiff's consent, Defendant violated Plaintiff's exclusive rights under 17 U.S.C. §106.

147.    Defendant distributed copies of the unauthorized derivative work based on the Kiosk Brochure in an effort to sell inmate email products and services.

148.    On information and belief, Defendant has retained copies of the Kiosk Brochure and infringing copies of derivative works based on the Kiosk Brochure.

149.    Plaintiff has been damaged by Defendant's actions including by losing sales of Plaintiff's own inmate email products and services, and by eroding the value of Plaintiff's business reputation.

150.    The damages suffered by Plaintiff due to Defendant's conduct are irreparable.

151.    Plaintiff has no adequate remedy at law in redress for Defendant's acts of copyright infringement.

152.    Plaintiff is entitled to damages resulting from Defendant's infringements in amounts to be proven at trial.

153.    Damages Plaintiff is entitled to include, but are not limited to, all gains, profits and advantages gained by Defendant by its infringement of Plaintiff's copyright or such other damages that may deemed proper by the Court.

154.    Plaintiff is further entitled to an order from this Court requiring the destruction of all copies of infringing works in the possession or control of Defendant.

155.    Plaintiff is further entitled to an order from this court permanently enjoining Defendant from infringing Plaintiff's copyright in the Kiosk Brochure or other works of authorship.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including awarding Plaintiff its compensatory, consequential, and special damages including its lost profits, Defendant's profits stemming from the use of infringing materials, pre- and post-judgment interest, attorney's fees and costs, and requiring Defendant to deliver to Plaintiff their entire inventory of all copies of the SmartKiosk Brochure and all marketing and other materials derived from or based thereon, and imposing of a constructive trust over Defendant's future profits derived from sales of messaging and video visitation products and services arising from Defendant's use of infringing materials for the benefit of the Plaintiff, and any other relief the Court finds just and appropriate.

### Count IV – Breach of Contract

156.    This count states a claim for damages for breach of contract.

157.    Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

158.    To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

159.    The NDA is an enforceable contract between Plaintiff and Defendant.

160.    Defendant has breached the NDA by failing to promptly return all of Plaintiff's confidential information, including the business model summary, after written demand.

161.    Defendant has also breached the NDA by using and/or disclosing Plaintiff's confidential information for improper purposes.

162.    Defendant's breach of the NDA has caused damage to Plaintiff, including lost profits and loss of reputation.

163.    Plaintiff is entitled to an award of damages as a result of Defendant's breach in an amount to be proven at trial.

164.    Under the NDA, Plaintiff is also entitled to an order from this court permanently enjoining further retention and improper use by Defendant of confidential information received from Plaintiff.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including consequential damages, pre- and post-judgment interest, and the entry of an injunction permanently prohibiting the further retention and improper use of Plaintiff's confidential information by Defendant, and any other relief the Court finds just and appropriate.

## Count V – Misappropriation of Trade Secrets

165.    This count states a claim for misappropriation of trade secrets in violation of state law.

166.    Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

167.    To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

168.    Plaintiff provided confidential information to Defendant pursuant to the NDA, including pricing information, details about the design and use of Plaintiff's SmartKiosk system, confidential information about Plaintiff's business model and operations, and other confidential information that derives independent economic value, actual and potential, from not being readily known and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

169.    Plaintiff takes reasonable efforts to maintain the secrecy of its confidential information by requiring others to enter into non-disclosure agreements before disclosing such information to them and using confidential bid procedures when it markets its SmartKiosk system to third parties.

170.    Defendant misappropriated the confidential information it received from Plaintiff by disclosing and/or using it without Plaintiff's express or implied consent.

171.    Defendant had acquired the confidential information under circumstances giving rise to a duty to maintain its secrecy or limit its use; namely, Plaintiff had entered into the NDA with the Plaintiff restricting the use and disclosure of the information and had entered into a partnership with the Plaintiff on account of which it owed the Plaintiff duties of loyalty and care.

172.    Defendant's actions constitute a willful and malicious misappropriation.

173.    Defendant's misappropriation of Plaintiff's trade secrets has caused, and will continue to cause, damages in the form of actual loss caused by the misappropriation and unjust enrichment to the Defendant.

174.    The damages include those representing the lost business opportunities caused by Defendants misconduct and the amounts by which the Defendant has been enriched because of its misappropriation.

175.    Plaintiff is entitled to an award of damages as a result of Defendant's misappropriation, including exemplary damages, in an amount to be proven at trial.

176.    Plaintiff is further entitled to an injunction requiring return of all of Plaintiff's confidential information in the possession or control of Defendant and permanently prohibiting the future use of Plaintiff's trade secrets by Defendant.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including exemplary damages, pre- and post-judgment interest, attorneys' fees and costs, and an injunction requiring the return of all of all trade secret information and permanently prohibiting Defendant from use and disclosure of Plaintiff's trade secrets, and granting any other relief the Court finds just and appropriate.

### Count VI – Tortious Interference with a Business Relationship (St. Tammany)

177.    Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

178.    To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

179.    Plaintiff had a business relationship with the correctional facility in St. Tammany Parish, Louisiana, as shown by the commitment of the facility to permit the installation and use of the SmartKiosk system.

180.    Plaintiff reasonably expected to receive more than $3,500,000.00 for services provided to inmates at the St. Tammany Parish facility over the course of a seven year contract.

181.    Plaintiff reasonably expected to receive additional revenue from other facilities in Louisiana as a result of providing its SmartKiosk system to the St. Tammany Parish facility.

182.    Defendant had knowledge of that business relationship by virtue of its efforts to market the SmartKiosk system to St. Tammany Parrish.

183.    Defendant intentionally and unjustifiably interfered with Plaintiff's relationship by inducing the St. Tammany facility to sever its relationship with Plaintiff, such that the St. Tammany facility now refuses to speak with Plaintiff regarding the commitment and directs all communications about the matter be directed to Defendant.

184.    On information and belief, Defendant also intentionally and unjustifiably interfered with Plaintiff's relationship by offering and providing an inmate messaging system and related services to St. Tammany Parrish through which the Plaintiff receives no benefit.

185.    Defendant's interference with the relationship was intended to harm Plaintiff.

186.    Defendant has no privilege to interfere with the business relationship.

187.    Defendant's interference with the relationship damaged Plaintiff, including by severing a relationship that would have led to the installation of many profitable kiosks at the St. Tammany correctional facility.

188.    Plaintiff is entitled to an award of damages in an amount to be proven at trial because of Defendant's interference.

24

189.     Plaintiff is further entitled to an order from this court permanently enjoining Defendant from any future interference with Plaintiff's business relationships, direct or indirect.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including pre- and post-judgment interest, and costs, and permanently enjoining Defendant from any future interference with Plaintiff's business relationships, direct or indirect, and granting any other relief the Court finds just and appropriate.

### Count VII – Tortious Interference with a Business Relationship (Richland County)

190.     Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

191.     To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

192.     Plaintiff had a business relationship with the correctional facility in Richland County, South Carolina, as shown by the commitment of the facility to permit the installation and use of the SmartKiosk system.

193.     Plaintiff, at its own expense, completed a site survey of the Richland County facility, identifying kiosk installation locations, connection points, and a project plan (including time estimates and cost projections) for installing the SmartKiosk System at that facility.

194.     Plaintiff had a reasonable expectation of receiving more than $3,200,000.00 in revenue for services provided to inmates at the Richland County facility through the course of a seven year contract.

195.     Plaintiff reasonably expected to receive additional revenue from other facilities in South Carolina as a result of providing its SmartKiosk system to the Richland County facility.

196.    Defendant had knowledge of that business relationship by virtue of its efforts to market the SmartKiosk system to the correctional facility in Richland County.

197.    Defendant intentionally and unjustifiably interfered with Plaintiff's relationship by inducing the Richland County facility to sever its relationship with Plaintiff.

198.    Representatives of the Richland County facility now refuse to speak with Plaintiff regarding the commitment.

199.    Defendant also intentionally and unjustifiably interfered with Plaintiff's relationship by offering and providing inmate messaging and related services to Richland County through which Plaintiff receives no benefit.

200.    Defendant's interference with the relationship was intended to harm Plaintiff.

201.    Defendant has no privilege to interfere with the business relationship.

202.    Defendant's interference with the relationship damaged Plaintiff, including by severing a relationship that in all probability would have led to the installation of many profitable kiosks at the Richland County correctional facility.

203.    Plaintiff is entitled to an award of damages in amounts to be proven at trial because of Defendant's interference.

204.    Plaintiff is further entitled to an order from this court permanently enjoining Defendant from any future interference with Plaintiff's business relationships, direct or indirect.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including pre- and post-judgment interest, costs, and permanently enjoining Defendant from any future interference with Plaintiff's business relationships, direct or indirect, and granting any other relief the Court finds just and appropriate.

### Count VIII – Tortious Interference with a Business Relationship (Polk County)

205.    Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

206.    To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

207.    Plaintiff had a business relationship with the correctional facility in Polk County, Georgia, as shown by the commitment of the facility to permit the installation and use of the SmartKiosk system.

208.    Representatives of Polk County communicated to Defendant that they were "very pleased" to be moving forward with installation of the SmartKiosk System, and that at least ten other facilities expressed interest in the SmartKiosk System.

209.    Plaintiff reasonably expected to generate more than $500,000.00 in revenue from the first Polk County Facility, over the course of a seven year contract.

210.    Plaintiff reasonably expected to receive additional revenue from other facilities in Georgia as a result of providing its SmartKiosk system to the Polk County facility

211.    Defendant had knowledge of Plaintiff's business relationship by virtue of its efforts to market the SmartKiosk system to the correctional facility in Polk County.

212.    Defendant intentionally and unjustifiably interfered with Plaintiff's relationship by inducing the Polk County facility to sever its relationship with Plaintiff, such that the Polk County facility now refuses to speak with Plaintiff regarding the commitment and directs all communications about the matter be directed to Defendant.

213.    Defendant also intentionally and unjustifiably interfered with Plaintiff's relationship by offering and providing inmate messaging and related services to Polk County through which the Plaintiff receives no benefit.

214.    Defendant's interference with the relationship was intended to harm Plaintiff.

215.    Defendant has no privilege to interfere with the business relationship.

216.    Defendant's interference with the relationship damaged Plaintiff, including by severing a relationship that in all probability would have led to the installation of many profitable kiosks at the Polk County correctional facility.

217.    Plaintiff is entitled to an award of damages in amounts to be proven at trial because of Defendant's interference.

218.    Plaintiff is further entitled to an order from this court permanently enjoining Defendant from any future interference with Plaintiff's business relationships, direct or indirect.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including pre- and post- judgment interest, costs, and permanently enjoining Defendant from any future interference with Plaintiff's business relationships, direct or indirect, and granting any other relief the Court finds just and appropriate.

### Count IX – Breach of Oral Contract

219.    Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

220.    To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

221.    Prior to meeting with the correctional facilities in St. Tammany Parish, Richland County, and Polk County, Plaintiff and Defendant mutually agreed that Plaintiff would be

responsible for providing, installing, and assisting in the sales of the SmartKiosk systems to Defendant's existing and prospective customers, and doing so at its own expense.

222.   Plaintiff and Defendant further mutually agreed that Defendant would market the SmartKiosk system to its existing and prospective customers, and do so at its own expense.

223.   Plaintiff and Defendant further mutually agreed that they would share certain revenues derived from the sales of SmartKiosk systems arising from their joint efforts.  The parties further agreed that Defendant would receive one-half of Remote Video Visitation revenues and Plaintiff would receive all other revenues from the SmartKiosk installations arising from the parties joint efforts.

224.   The parties agreed that the losses associated with each party's efforts would be borne by each such party.

225.   Plaintiff performed its obligations under the agreement, including by providing marketing information, performing site surveys, and assisting in the sales process for at least St. Tammany Parish, Richland County, and Polk County.

226.   Defendant breached the agreement between Plaintiff and Defendant by not marketing the SmartKiosk system to its own existing and prospective customers.

227.   Alternatively, Defendant breached the contract by marketing the SmartKiosk system to correctional facilities within St. Tammany Parish, Polk County, and Richland County, entering into business relationships with those entities, but not sharing the revenues generated from those relationships with Plaintiff.

228.   Defendant's breaches of contract have caused Plaintiff damages, including consequential damages in the form of lost profits.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including consequential damages, pre- and post-judgment interest, costs, and any other relief this Court finds just and appropriate.

### Count X– Breach of Fiduciary Duty (Partnership – Loyalty)

229. Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

230. To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

231. Upon entering into the NDA, Plaintiff and Defendant subsequently entered into a limited joint venture to market and sell SmartKiosk system to correctional facilities in St. Tammany Parish, Richland County, and Polk County for profit.

232. The chief executive office of the joint venture was located in Florida.

233. Plaintiff and Defendant intended to be co-owners of the limited business, and thus formed a partnership.

234. Defendant, as a partner, owed Plaintiff, as a partner, a duty of loyalty to refrain from competing with the partnership in the conduct of the partnership business.

235. Defendant breached that duty by appropriating the partnership opportunities the partnership had with St. Tammany Parish, Richland County, and Polk County for its own benefit.

236. Defendant further breached that duty by taking information and materials it received from Plaintiff for the purposes of furthering the partnership, and using that information and those materials to develop products and services intended to compete with Plaintiff.

237. Defendant's breach has caused Plaintiff damages in the form of the lack of partnership profits to which it is entitled to share in, and loss of future profits resulting from

Defendant's use of information and materials received from Plaintiff in furtherance of the partnership to develop and sell competing products and services.

238.    Plaintiff is entitled to an award of damages in amounts to be proven at trial as a result of Defendant's improper competition with the partnership, an accounting of the profits held by the Defendant as a result of its actions, and the imposition of a constructive trust over such profits and Defendant's future profits derived from competing products and services for the benefit of the Plaintiff.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including pre- and post-judgment interest, and costs, an accounting of partnership profits held by Defendant, and the imposition of a constructive trust for the benefit of Plaintiff over any partnership profits now or in the future held by Defendant as a result of its conduct.

### Count XI – Breach of Fiduciary Duty (Partnership – Care)

239.    Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

240.    To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

241.    After entering into the NDA, Plaintiff and Defendant entered into a limited joint venture to market and sell the Smart Kiosk system to correctional facilities in St. Tammany Parish, Richland County, and Polk County for profit.

242.    The chief executive office of the joint venture was located in Florida.

243.    Plaintiff and Defendant intended to be co-owners of the limited business, and thus formed a partnership.

244.   Defendant, as a partner, owed Plaintiff, as a partner, a duty of care to refrain from intentional misconduct in the conduct of the partnership business.

245.   Defendant breached that duty by intentionally appropriating the partnership opportunities the partnership had with St. Tammany Parish, Richland County, and Polk County for its own benefit, and intentionally preventing Plaintiff from sharing in the profits of the partnership, by refusing to communicate with Plaintiff about the activities of the partnership and instructing others not to do so.

246.   Defendant further breached that duty by intentionally failing to exercise care to ensure that confidential information and materials provided by Plaintiff in furtherance of the partnership were used only for the benefit of the partnership.

247.   Defendant's breach has caused Plaintiff damages in the form of the lack of partnership profits to which it is entitled to share in, and future profits Plaintiff will lose as a result of Defendant's improper use of information and materials provided by Plaintiff for improper purposes.

248.   Plaintiff is entitled to an award of damages in amounts to be proven at trial as a result of Defendant's improper competition with the partnership, an accounting of the profits held by the Defendant as a result of its actions, and the imposition of a constructive trust over such profits for the benefit of the Plaintiff.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including pre- and post-judgment interest, and costs, and accounting of partnership profits held by Defendant, and the imposition of a constructive trust for the benefit of Plaintiff over any partnership profits now or in the future held by Defendant as a result of its conduct.

**Count XII– Violation of Florida Deceptive and Unfair Trade Practices Act**

249.    Plaintiff incorporates paragraphs 1 through 77, 82 through 108, 119 through 123, and 168 through 172, as if set forth fully within this count.

250.    To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

251.    Defendant's actions represent unfair methods of competition against Plaintiff, unconscionable acts and practices, and unfair and deceptive acts.

252.    Defendant's actions occurred in the conduct of trade and commerce, namely its business relationship with the Plaintiff and its customers including St. Tammany Parish, Richland County, and Polk County.

253.    Defendant's actions have caused damages to Plaintiff by causing Plaintiff to lose sales and revenues from Plaintiff's own SmartKiosk system, and by eroding the value of Plaintiff's business reputation.

254.    A substantial portion of the conduct giving rise to this Count occurred in Florida, including the formation of the relationship between the parties, the initial disclosure of confidential information, including kiosks, the failure to return Plaintiff's confidential information as required under the NDA, and meetings between the parties to discuss the relationship, including calls placed and e-mails sent to Plaintiff in Florida.

255.    The business relationship between the parties was centered in Florida, where the centerpiece of the parties' business relationship, the creation, operation, and support of the SmartKiosk system, was to take place.

256.    Plaintiff's loss of sales and revenues was experienced in Florida, where moneys from transactions with customers would have been paid to Plaintiff.

257. Plaintiff is entitled to damages in amounts to be proven at trial for Defendant's acts of deceptive and unfair trade practices, and to recover its attorneys' fees.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including pre and post judgment interest, attorneys' fees and costs, and any other relief this Court finds just and appropriate.

## Count XIII– Unjust Enrichment

258. Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

259. To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

260. Plaintiff provided Defendant with the sales assistance, materials, and confidential information with the understanding that it would be used only furtherance of a joint business relationship with Defendant to sell the SmartKiosk system in facilities in St. Tamany's Parish, Richland County, and Polk County and such other locations as the parties mutually agreed upon.

261. Plaintiff would not have disclosed the sales assistance, materials and confidential information to Defendant solely for the Defendant's own use. Defendant understood this condition.

262. Defendant induced Plaintiff to provide the assistance, materials and confidential information under the pretenses of forming a continuing business relationship with the Plaintiff.

263. Defendant, however, appropriated the joint business opportunities for itself and, on information and belief, used Plaintiff's confidential information and materials to create competing products and services for its sole benefit and to harm Plaintiff.

34

264.     Defendant voluntarily accepted sales assistance, materials and confidential information, and retained the confidential information and materials.  It subsequently used the confidential information and materials to generate a benefit for itself, and has not provided any of that benefit to Plaintiff.

265.     Under these circumstances, it is inequitable for the Defendant to retain the benefit of the Confidential Information without providing just compensation to the Plaintiff.

266.     Plaintiff is entitled to damages in amounts to be proven at trial to compensate Plaintiff for Defendant's unjust enrichment.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant for damages, including pre- and post-judgment interest and costs, and any other relief this Court find just and appropriate.

### Count XIV – Declaratory Judgment

267.     Plaintiff incorporates paragraphs 1 through 77 as if set forth fully within this count.

268.     This count states a claim for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57.

269.     To the extent the allegations in this count are inconsistent with the allegations in any other count, they are intended to be alleged in the alternative.

270.     Defendant's counsel sent a letter to Plaintiff on May 1, 2014 stating that the president of Plaintiff, Jim Logan, had been contacting customers of Defendant "seeking access to their facilities so that he can begin installing his Smart Kiosk system there."   Defendant demanded for such communications stop and threatened a lawsuit for "all available legal remedies, including filing suit for tortious interference with business relations" if they did not.

271.    The letter has created a controversy between the parties as to whether Plaintiff is subject to legal liability if it attempts to sell its SmartKiosk system to facilities in St. Tammany Parish, Polk County, or Richland County.

272.    The letter created bona fide, actual, present practical need for a declaration that communications from the Plaintiff to Defendant's customers regarding the sale and installation of the SmartKiosk system are permissible under the law.

273.    Plaintiff's sole business is providing the SmartKiosk system to correctional facilities, and Defendant has no right to prevent Plaintiff from marketing and selling the system to any of its customers.

274.    The declaration is especially important given that Defendant already has business relationships with a large number of correctional facilities around the country, and Defendant's demand to stop communications to Defendant's customers significantly limits the business opportunities the Plaintiff may pursue.

275.    Defendant's demand has created a present controversy as to whether Plaintiff's communications with Defendant's existing customers regarding the SmartKiosk system are a tortious interference with Defendant's business relationships or acts of unfair competition by Plaintiff.

276.    The Defendant is the only party with a known adverse interest to the entry of a declaration stating that Plaintiff's communications are not a tortious interference with a business relationship of Defendant.

277.    Plaintiff is not requesting declaratory relief merely for legal advice from the Court or to get the answer to a question to satisfy its curiosity.

36

278.    Plaintiff needs to have the declaration so that it can continue to market its SmartKiosk system without continued threats of litigation.

WHEREFORE, Plaintiff demands that a judgment be awarded against Defendant declaring that Plaintiff's past and future communications to Defendant's customers regarding the sale and installation of the SmartKiosk system do not tortuously interfere with a business relationship and are not actionable unfair competition.

## DEMAND FOR JURY TRIAL

279.    Plaintiff demands a trial by jury on all triable issues.

CARLTON FIELDS JORDEN BURT, P.A.
4221 W. Boy Scout Blvd.
Suite 1000
Tampa, FL 33607
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133
csacco@cfjblaw.com
wgiltinan@cfjblaw.com
mleeman@cfjblaw.com

By: _____
        Christopher M. Sacco
        Florida Bar No.:  557420
        William G. Giltinan
        Florida Bar No.: 27810
        Michael V. Leeman
        Florida Bar No.: 84422
        *Lead Trial Counsel for Plaintiff*